**Edward WINSCHEL, Appellant,**

**v.**

**SCOTT TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.

Decided April 14, 1997.

Richard J. Joyce, Pittsburgh, for appellant.

Patricia Liptak-McGrail, Pittsburgh, for appellee.

Before McGINLEY, and FLAHERTY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issues presented in this appeal require us to determine what rights an appointee to a township police department is entitled during his probationary period.

Edward Winschel (Winschel) appeals from the order of the Court of Common Pleas of Allegheny County that dismissed Winschel's appeal from his discharge as a probationary police officer by the Scott Township Board of Commissioners (Board). We affirm.

By letter dated February 10, 1993, the Board notified Winschel that he had been hired to a full-time police officer's position with a one-year probationary period. Winschel was assigned Officer James Secreet, as a training officer. Secreet spent three months with Winschel during which time Secreet prepared written notes called "advisements," evaluating Winschel's performance. The advisements critiqued and evaluated Winschel's conduct as a police officer. The advisements were presented to and discussed with Winschel and indicated the following: 1) Winschel failed to notify his training officer before initiating police action, contrary to instructions; 2) Winschel loitered in the police building while on duty, contrary to policy; 3) Winschel failed to properly investigate a situation with obvious signs of criminal conduct and reacted to the failure to investigate as humorous; 4) Winschel was inattentive to his duties while on patrol and demonstrated unprofessional conduct by reading a newspaper in his vehicle on several occasions while on patrol; and 5) Winschel abused his sick-day privileges. Secreet also presented these advisements to Police Chief Stanley Butkus. In addition to the incidents referenced by Officer Secreet in the advisements, Sergeant Frank Augustine informed Chief Butkus of an incident involving a street fight where Augustine intervened but Winschel passively watched from across the street and failed to assist Augustine.

On June 26, 1993, Chief Butkus issued a recommendation to the Board that Winschel be terminated. The Board voted to terminate Winschel from his employment immediately and advised Winschel of his right to a post-termination hearing as established in *Elmer v. Board of Commissioners of Wilkins Township,* 122 Pa.Cmwlth. 516, 552 A.2d 745 (1989). Winschel was also notified that the Township's Ordinances Nos. 1035–78 and 1375–93 [1] would be applicable.

At the hearing, Officer Secreet and Sergeant Augustine testified as well as Chief Butkus. Winschel did not testify at the hearing. The Board affirmed the decision to

1. Ordinance No. 1375–93 which was enacted immediately prior to Winschel's termination stated that a Township could terminate an employee during his probationary period if "the Board is convinced from any police department report that said appointee does not have the attitude to become a good police officer." Winschel asserts that Ordinance No. 1035–78 did not authorize the Township to terminate a probationary police officer during his probation period, but only provided for the termination of a probationary police officer at the conclusion of the probation and thus, passage of ordinance No. 1375–93 was only to legitimate his termination.

terminate Winschel. Winschel appealed and the trial court affirmed.[2]

On appeal to this Court,[3] Winschel argues the following: 1) improper notice; 2) failure to establish cause under Section 637 of The First Class Township Code (Code), Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 55637; 3) that cause under Section 637 must be determined by the Civil Service Commission and not the Board; 4) the Board's reliance on Ordinance No. 1375–93 was improper; 5) improper commingling of prosecutorial and adjudicatorial functions; and 6) his constitutional rights were abridged.

First, Winschel asserts that he did not receive proper notice of the factual basis for his termination. Winschel also asserts that the notification that he would be entitled to an *Elmer*-type hearing was confusing because *Elmer* addressed the type of hearing at the conclusion of the probationary period and not the type of hearing required when an officer is terminated during his probationary period.

While the Township's notice of Winschel's termination did not set forth the factual basis for the termination, Winschel received detailed written advisements and admitted to Chief Butkus that he abused the Township's sick-leave policy. Winschel had the opportunity to challenge the advisements presented at the hearing but chose not to testify.

We agree with the trial court that concluded:

> Appellant was fully informed of the nature of the hearing to be conducted and fully informed of all of the reports and recommendations under consideration constituting the charges against him for which he might be terminated. Appellant was advised in writing of all the causes for his termination. He was given "advisements" as they occurred. Despite the fact that it was stated that these were not to be held against him, any reasonable prudent probationary employee should be aware if there are sufficient number of problems that they will be acted upon by an employer. (Attachment # 1 at p. 3.)

As to Winschel's alleged confusion with *Elmer* applying only to hearings at the end of the probationary period, we are not persuaded. A reading of *Elmer* clearly demonstrates that *Elmer* requires nothing more than post-termination hearings for probationary employees. Certainly an employee who was not considered capable of concluding probationary employment would not be entitled to more rights than one that has completed the probationary period, albeit unsuccessfully.

Next, Winschel asserts that the Board could only discharge him for cause. Section 640 of the Code states, in pertinent part:

> All original appointments to any position in the police force ... shall be for a probationary period of not less than six months and not more than one year, *but during the probationary period an appointee may be dismissed only for a cause specified in Section 637 of this subdivision.* If at the close of a probationary period the conduct or fitness of the Probationer has not been satisfactory to the Township Commissioners, the Probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease; otherwise, his retention shall be equivalent to a permanent position. (Emphasis added.)

53 P.S. § 55640.

Section 637 of the Code states that a probationary police officer may be terminated where the police officer is:

> The commission may refuse to examine or, if examined, may refuse to certify after examination as eligible, any applicant who

2. Winschel filed a 10–count civil action at GD94–006116, naming as defendants the Township, the Board, each of the nine commissioners and Chief Butkus. The defendants filed preliminary objections which were granted as to nine counts, leaving only the wrongful discharge-tort claim which has been stayed pending a final decision on this statutory appeal.

3. Because no additional evidence was taken by the trial court, our scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *Warwick Land Development Corp. v. Supervisors of Warwick Township*, 31 Pa.Cmwlth. 450, 376 A.2d 679 (1977).

is found to lack any of the minimum qualifications for examination prescribed in the rules and regulations adopted for the position of employment for which he has applied, or who is physically disabled and unfit for the performance of the duties of the position to which he seeks employment, or who is addicted to the habitual use of intoxicating liquors or narcotic drugs, or who has been guilty of any crime involving moral turpitude or of infamous or notoriously disgraceful conduct, or who has been dismissed from public service for delinquency or misconduct in office, or who is affiliated with any group whose politics or activities are subversive to the form of government set forth in the constitution and laws of the United States and Pennsylvania.

The Board terminated Winschel on the basis that his conduct was deficient under Section 637 of the Code, stating it found Winschel's conduct fit under the rubric of "infamous" or "notoriously disgraceful conduct." The Board, as affirmed by the trial court, found that substantial evidence supported the conclusion that Winschel was "unfit for duty as a police officer; performed his duties unsatisfactorily; neglected his official duties; disobeyed rules; and that his conduct was unbecoming of an officer thereby justifying its termination action." Trial court opinion at 5.

Winschel asserts, however, that Section 637 requires him to have been found guilty of a crime involving infamous or notoriously disgraceful conduct. We do not agree with this interpretation. While there are crimes involving moral turpitude, we have found no crimes which are necessarily defined as "infamous" or "notoriously disgraceful conduct." While Section 637 of the Code does not contain a list of activities which define the words "infamous" or the phrase "notoriously disgraceful conduct," the Board found Winschel's actions/inactions constituted infamous conduct and/or notoriously disgraceful conduct for which he was rightfully terminated.[4]

Winschel next contends that Ordinance No. 1035–78 should be the ordinance which controls whether the Board had the authority to discharge him during his probationary period and that standing alone, Ordinance No. 1035–78 did not give the Board such authority. Winschel asserts that only when it enacted Ordinance No. 1375–93 was such authority attained. We do not agree.

Ordinance No. 1375–93 served to amend and conform the 1978 Ordinance to the language and provisions of Section 640 of the Code. Winschel asserts that the Township, by enacting Ordinance No. 1375–93 authorized itself to discharge probationary police officers during their probationary period, something it was not allowed to do under Ordinance No. 1035–78, and thus, the Board exceeded its authority. However, we believe that the Board did not exceed its authority because Ordinance No. 1375–93 only embellished the Board's interpretation of Section 637 of the Code.

Finally, Winschel asserts that he is entitled to a de novo hearing or a trial by jury on his constitutional claims. These claims are based on the following: 1) the Board's refusal to allow Winschel to call Commissioner Fallon as a witness to discuss the circumstances of a public safety meeting; 2) the Board's refusal to allow Winschel to cross-examine Chief Butkus on who the Township planned to hire to replace him; and 3) the Board's refusal to admit into evidence the list of eligible applicants. Winschel asserts that the factual issues associated with the constitutional claims would not

4. Winschel argues that in *In Re: Appeal of Carlson*, 152 Pa.Cmwlth. 285, 618 A.2d 1206 (1992), that we interpreted Section 613 of the Code, 55 P.S. § 55613, to require a hearing before the Civil Service Commission when an applicant had his name stricken off of an eligibility list. Winschel asserts that an employee, as opposed to a mere applicant, should be entitled to at least the same level of protection under Section 637. However, we do not agree because in the striking off of an eligibility list it is the Board which makes such recommendation. If the Board were to conduct the Section 613 hearing, there would be a commingling of the adjudicatorial and prosecutorial functions. In Section 637 cases, it is the police chief that recommends to the Board that an employee not be retained. Thus, when the Board conducts the hearing there is no commingling of the prosecutorial and adjudicatorial functions.

necessarily be part of the record before the local agency and thus, the trial court erred in rejecting his claims.

The trial court found that Winschel's constitutional claims were without merit as he failed to meet his burden of showing bias or discrimination under *Cunningham v. State Civil Service Commission*, 17 Pa.Cmwlth. 375, 332 A.2d 839 (1975). We must agree.

Winschel made no allegations of any specific wrongdoing by the Board, nor that he had been treated discriminatorily. We have carefully reviewed the record and agree with the trial court that Winschel had a full and complete opportunity to present and cross-examine witnesses, enter documentary evidence and give personal sworn testimony. Therefore, we hold that the trial court properly determined that Winschel's constitutional rights had not been abridged.

Accordingly, we affirm.

***ORDER***

AND NOW, this 14th day of April, 1997, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.